**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SECURE AXCESS, LLC,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:13-CV-724** |
| | § | |
| **VANGUARD GROUP INC.**, *et al*. | § | |

## ORDER

Before the Court is Defendants Vanguard Group, Inc. and Vanguard Marketing Corporation's (collectively, "Vanguard") Opening Brief in Support of Motion to Transfer Venue After Claim Construction Order ("Motion"). Docket No. 27. For the reasons stated herein, Vanguard's Motion is **DENIED**.

## BACKGROUND

On September 27, 2013, Plaintiff Secure Axcess, LLC ("Secure Axcess") filed the above-styled action against Vanguard alleging infringement of United States Patent Number 7,631,191 ("the '191 Patent"). *See* Docket No. 1. On February 20, 2014, Vanguard filed the Motion requesting transfer to the Eastern District of Pennsylvania following the issuance of the Court's Claim Construction Order. Docket No. 27 at 1. Secure Axcess is a Texas limited liability company, with its principal place of business in Plano, Texas. Docket No. 1, ¶ 2. Vanguard is organized under Pennsylvania law and headquartered in Malvern, Pennsylvania, within the Eastern District of Pennsylvania. Docket No. 27 at 4.

At the time Vanguard filed the Motion, there were seventeen separate but related actions pending before the Court.[1]

---

[1] On June 9, 2014, the Court ordered all the currently pending and related actions be consolidated for pretrial issues only, with the exception of venue. *See* Docket No. 52.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The Plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314–5 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200.

Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–5.

## DISCUSSION

Vanguard moves to transfer this case to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a) following the issuance of the Claim Construction Order. Docket No. 27.

### I.      Threshold – Eligibility for Transfer

Vanguard is organized under Pennsylvania law and headquartered in Malvern, Pennsylvania, within the Eastern District of Pennsylvania. Docket No. 27 at 4. Secure Axcess does not dispute that this case could have originally been brought in the Eastern District of Pennsylvania. Thus, the threshold inquiry is satisfied, and the Court turns to the public and private interest factors.

### II.     Convenience

#### A.  Private Factors

##### i.   *Relative Ease of Access to Sources of Proof*

This factor is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *In re Volkswagen II*, 545 F.3d at 316. Consequently, courts analyze the distance documents must be transported from their physical location to the trial venue; acting under the assumption that electronically stored documents are, in fact, physical. *See Id.* In addition, the Federal Circuit requires courts to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Finally, parties must identify sources of proof with some specificity such that the court may determine whether

transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Vanguard argues that the relevant documents and other sources of proof relating to the accused functionality are located primarily in the Eastern District of Pennsylvania, and not in the Eastern District of Texas. Docket No. 27 at 12. Specifically, Vanguard states that technical documents, source code, and marketing information relating to the accused functionality are located in Pennsylvania. *Id.* Secure Axcess responds that it maintains all its documents in Plano, Texas. Docket No. 30 at 6. Secure Axcess contends that the documents used in a previous litigation involving the '191 Patent are located in Plano, and within this Court's records. *Id.*

This factor weighs slightly in favor of transfer. Vanguard identifies, with some specificity, documents and sources of proof relating to the accused functionality, all of which are located in the Eastern District of Pennsylvania. While Secure Axcess states that relevant and previously used '191 Patent litigation documents are located in the Eastern District of Texas, it does not specifically identify these documents and relate them to the current litigation against Vanguard. Thus, this factor weighs slightly in favor of transfer.

### ii. *The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

This factor weighs heavily in favor of transfer when more third-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over these third-party witnesses. *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. Additionally, courts give more weight to those specifically identified witnesses and afford less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-CV-229, 2010 WL

5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-CV-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Vanguard does not identify any third-party witnesses residing in the Eastern District of Pennsylvania who would be subject to its "absolute subpoena power." *See* Docket No. 27. Secure Axcess does not specifically identify any third-party witnesses that would be subject to Texas' "absolute subpoena power." Instead, it argues that newly amended Federal Rule of Civil Procedure 45 allows courts to compel the deposition testimony of third-party witnesses, so long as the deposition occurs within 100 miles of the witness's residence or regular place of business. Neither Party identifies third-party witnesses subject to the absolute subpoena power of either District. Accordingly, this factor is neutral.

### iii.   The Cost of Attendance for Willing Witnesses

The Federal Circuit explains that the "convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 13388, 1342 (Fed. Cir. 2009). In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. However, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). District courts should assess the relevance and materiality of the information the witness may provide, but there is no requirement that the movant demonstrate that the witness has anything more than relevant and material information.  *In re Genentech, Inc.*, 566 at 1343–44.

The Fifth Circuit established a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–205; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320

(Fed. Cir. 2008) ("Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home...."). The threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317. If so, then a court compares the respective distances between the residences of all the identified material and relevant witnesses and the transferor and transferee venues. *Id.* Transfer is favored if the transferee venue is a shorter average distance from witnesses as compared to the transferor venue. *See Id.*

Vanguard contends the Eastern District of Pennsylvania is more convenient for Vanguard employees with relevant knowledge of the accused functionality. Docket No. 27 at 10. Vanguard identifies Principal of IT Charles McGrane, Technology Specialist Glenn MacBride, and Technology Specialist Surya Pallem as having relevant knowledge of the accused functionality. *Id.*, *see also* Docket No. 27-1, ¶ 9. Vanguard also identifies Project Manager Eric Koup of the Retail Marketing and Communication Group as having relevant knowledge of the marketing behind the accused functionality. Docket No. 27 at 10, *see also*, Docket No. 27-1, ¶ 12. Vanguard argues these employees would have to travel more than 1,400 miles to the Tyler courthouse, compared to less than 30 miles to the close courthouse in the Eastern District of Pennsylvania. Docket No. 27 at 10. Vanguard further contends that the Eastern District of Pennsylvania is more convenient for "many of the potential third party witnesses." *Id.* at 11. Vanguard argues that third-party witness EMC — provider of the technology behind the accused functionality — is based out of Massachusetts, which is substantially closer to the Eastern District of Pennsylvania. *Id.* at 5 and 11.

Secure Axcess responds that convenience to non-party witnesses is more important than party witnesses. Docket No. 30 at 8. Secure Axcess contends that Vanguard failed to take into

account other non-party witnesses, such as the '191 Patent inventors. *Id.* at 9. Secure Axcess argues that taking into consideration the location of the '191 Patent inventors, the prosecuting attorneys for the '191 Patent, and the '191 Patent licensees shows that the Eastern District of Texas is more convenient. *Id.* at 11 (For "likely" witnesses, "the average distance to [this District] is 1,122 miles, compared to 1,790 miles for [the Eastern District of Pennsylvania].). Secure Axcess further argues that the average distance becomes 818 miles to Tyler and 1,689 miles to the Eastern District of Pennsylvania when taking in to account the non-party witnesses deposed in the prior litigation involving the '191 Patent. *Id.*

Vanguard showed that the Eastern District of Pennsylvania would be more convenient for at least Vanguard employee witnesses and EMC. However, Vanguard failed to take into consideration the convenience to a number of non-party witnesses. Three '191 Patent inventors and the prosecuting attorneys live west of Texas, while one inventor lives in Florida. The convenience to these likely witnesses outweighs the Vanguard employee witnesses and EMC. *Mohamed*, 90 F. Supp. 2d at 775. Based on the identified witnesses, this factor slightly weighs against transfer.

### iv.   *Other Practical Problems*

Practical problems include those related to judicial economy. In particular, multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). In 2010, the Federal Circuit explained that denial of transfer based on judicial economy is proper when "the trial court became very familiar with the only asserted patent and the related technology during a prior litigation." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Additionally, co-pending litigation before the court involving the same patent and underlying technology provides a substantial justification for maintaining the suit in the transferor venue. *Id.*

Vanguard argues that transfer will not cause any judicial economy issues because it is not seeking transfer until after claim construction is resolved. Docket No. 27 at 12. Secure Axcess responds that Vanguard "implicitly concedes that judicial economy is served by litigating at least *some* of the issues in a single Court." Docket No. 30 at 12 (emphasis in original). Secure Axcess argues that the Eastern District of Texas is familiar with the '191 Patent and substantive factual issues related to infringement, validity, and damages. *Id.* at 14. Secure Axcess contends that EMC is a software provider for several of the named defendants, and EMC testimony will be relevant in several of the sixteen currently pending cases. *Id.* at 14. Furthermore, all third-party witnesses will be common in many of the cases, and transfer would all but guarantee burden on these witnesses. *Id.*

This Court is very familiar with the '191 Patent, the related technology, and substantive factual issues that arise after claim construction. *See Secure Axcess, LLC v. Bank of America Corp., et al.*, Civil Action No. 6:10-CV-670-LED. Additionally, "[w]here multiple and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis." *ComCam Int'l, Inc. v. Mobotix Corp.*, 2:13-CV-00798-JRG, 2014 WL 4229711 (E.D. Tex. Aug. 26, 2014) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). Here, there were seventeen related actions pending before the Court involving the '191 Patent when Vanguard filed this Motion. Accordingly, judicial economy weighs against transfer.

## B.  Public Interest Factors

The Parties maintain all of the public interest factors are neutral except local interest and the forum's familiarity with the law. Docket No. 27 at 13–14; and Docket No. 30 at 15.

### i.  The Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206.  Interests that could apply to any district in the United States, for example the sale of infringing products, are disregarded in favor of particularized local interest. *In re Volkswagen II*, 545 F.3d at 318. Local interests may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *See Hoffman–La Roche,* 587 F.3d at 1336.

Vanguard contends that its presence in the Eastern District of Pennsylvania creates a strong localized interest in litigating this case in Pennsylvania. Docket No. 27 at 13. Vanguard argues that its presence is substantial, with over 9,900 employees located in the Eastern District of Pennsylvania. *Id.* Vanguard argues that the Eastern District of Texas does not have a comparable interest because Secure Axcess currently has no employees living in this District. *Id.* Secure Axcess maintains that this factor is neutral because Vanguard directs its infringing activities nationwide.  Docket No. 30 at 15.

Vanguard has a strong local connection to the Eastern District of Pennsylvania. While Vanguard targets its website nationwide, the site is not specifically targeted toward the Eastern District of Texas. In contrast, even though Secure Axcess has a presence in this District, Vanguard has a stronger localized interest. Thus, this factor favors transfer.

### *ii.  Familiarity of Forum with Governing Laws*

Secure Axcess argues that although both Courts are familiar with federal law, the Eastern District of Texas participates in the Patent Pilot Program, whereas the Eastern District of Pennsylvania does not. *See* Docket No. 30 at 15. The Patent Pilot Program is designed to enhance a district court's expertise in patent cases. Courts selected to participate in the Patent Pilot Program have some of the largest number of patent cases, and have adopted or have the intention of adopting local rules for patent cases. However, balanced with the capability of all district courts to handle patent cases, this factor only slightly disfavors transfer.

### *iii.  The Remaining Public Interest Factors*

The Parties have not identified any issues regarding the administrative difficulties flowing from court congestion or the avoidance of unnecessary problems of conflict of laws. Thus, these remaining public interest factors are neutral.

### CONCLUSION

For the reasons stated above, Vanguard failed to establish that the Eastern District of Pennsylvania is a clearly more convenient forum. Based on the evidence presented, three convenience factors weigh slightly against or strongly against transfer, two factors weigh for or slightly for transfer, and three factors are neutral. Thus, Vanguard has not proved that the Eastern District of Pennsylvania is clearly more convenient. Accordingly, the Court **DENIES** Defendants Vanguard Group, Inc. and Vanguard Marketing Corporation's Opening Brief in Support of Motion to Transfer Venue After Claim Construction Order (Docket No. 27).

So ORDERED and SIGNED this 25th day of September, 2014.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE